Joseph J. Siprut*
*jsiprut@siprut.com*
James M. McClintick
*jmcclintick@siprut.com*
SIPRUT PC
122 South Michigan Ave.
Suite 1850
Chicago, Illinois 60603
312.588.1440
Fax: 312.427.1850

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA 92101
619. 255.2380
Fax: 619.231.4984

*Pro hac vice* admittance to be sought

Counsel for Plaintiffs and the Proposed Putative Classes

E-filing

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE BAYER and KANDI COOK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC<br><br>Defendant. | Case No. **12 2826**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

ORIGINAL

1    Plaintiffs Steve Bayer and Kandi Cook (collectively, "Plaintiffs"), individually and on
2  behalf of all others similarly situated, by and through their counsel, bring this Class Action
3  Complaint against Defendant Comcast Corporation ("Comcast" or "Defendant"). Plaintiffs, on
4  their own behalf and on behalf of a class of similarly situated individuals, allege as follows upon
5  personal knowledge as to themselves and their own acts and experiences, and, as to all other
6  matters, upon information and belief, including investigation conducted by their attorneys.

## I. NATURE OF THE ACTION

8    1.    Cable and satellite television are a staple in American households, viewed by
9  many to be as ordinary and essential as gas and electric service. Comcast uses its position as the
10  nation's largest provider of cable television to collect personal information – such as names,
11  addresses, social security numbers, and credit card numbers – from tens of millions of consumers
12  across the country.

13    2.    After consumers terminate their service with Comcast, however, and this
14  information is no longer needed to provide service or collect payment, Comcast continues to
15  maintain personally identifiable information on all of its previous customers indefinitely. This
16  conduct violates the Cable Communications Policy Act, 47 U.S.C. § 551, *et. seq.* ("CCPA"),
17  which requires cable operators to destroy personally identifiable information when it is no longer
18  required for the purpose for which it was collected.

19    3.    Moreover, consumers are unaware that their personally identifiable information is
20  retained indefinitely by Comcast, as Comcast fails to send annual privacy notices informing
21  consumers that Comcast continues to retain their information. This conduct constitutes
22  additional violations of CCPA.

23    4.    Accordingly, Plaintiffs assert claims on their own behalf and on behalf of the
24  other members of the below-defined Class for violations of CCPA, 47 U.S.C. § 551 (a) & (e),
25  plus additional claims under California state law on behalf of a California Subclass.

26

27

28
CLASS ACTION COMPLAINT

1

## II. JURISDICTION AND VENUE

2      5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which
3  confers upon the Court original jurisdiction over all civil actions arising under the laws of the
4  United States, and pursuant to 18 U.S.C. §§ 2520 and 2707 and 18 U.S.C. § 1030. This Court
5  also has supplemental jurisdiction over Plaintiffs' state statutory claims and common-law claims
6  under 28 U.S.C. § 1367.

7      6.      In addition, this Court has original jurisdiction pursuant to 28 U.S.C. §
8  1332(d)(2). In the aggregate, Plaintiffs' claims and the claims of the other members of the Class
9  exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who
10  are citizens of states other than Comcast.

11     7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2),
12  and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims
13  emanated from activities within this District, and Comcast conducts substantial business in this
14  District. Specifically, Comcast provides cable and Internet services for residents and commercial
15  facilities in towns and cities throughout this District, subjecting it to this Court's personal
16  jurisdiction and making it a "resident" of this District for purposes of venue.

17

## III. PARTIES

18  *Plaintiffs*

19     8.      Steve Bayer ("Bayer") is a natural person and citizen of the State of Illinois.

20     9.      Kandi Cook ("Cook") is a natural person and citizen of the State of California.

21  *Defendant*

22     10.     Comcast is a Pennyslvania corporation headquartered at 1701 John F. Kennedy
23  Boulevard in Philadelphia, Pennsylvania. Comcast is the nation's largest cable operator,
24  servicing over 20 million customers. Comcast provides cable services to customers in 39 states,
25  including the State of California.

26

27

28

CLASS ACTION COMPLAINT

-3-

1

## IV. FACTUAL BACKGROUND

2

*The Cable Communications Policy Act*

3     11.     On October 30, 1984, Congress passed the Cable Communications Policy Act

4 ("CCPA") in order to promote competition among providers of cable services and establish a

5 national policy concerning cable communications and their operators. An important objective of

6 Congress in establishing such a policy was to protect cable subscribers' sensitive personal

7 information from misuse and improper disclosure. To that end, Congress made sure that the Act

8 incorporated privacy guidelines jointly established several years earlier by the 34 nations

9 comprising the Organization for Economic Cooperation and Development.

10     12.     When CCPA was under debate, legislative leaders noted that both common-sense

11 privacy concerns and the constitutional rights of citizens were at stake:

12

13

14

15

16

17

18

19

20

> Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber. Subscriber records from interactive systems can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions. It is [therefore] important that national cable legislation establish a policy to protect the privacy of cable subscribers. A national policy is needed because, while some franchise agreements restrict the cable operator's use of such information, privacy issues raise a number of federal concerns, including protection of the subscribers' first, fourth, and fifth amendment rights. At the same time, such a policy must also recognize and unnecessarily or unreasonably impede those flows of information necessary to provide the service to the subscribers.

21 H.R. Rep. 98-934 at 4666-67 (1984).

22     13.     These observations, now nearly 30 years old, are just as relevant today.

23 Subscribers continue to disclose some of their most sensitive identifying information to their

24 cable operator as a condition to entering into a contract for service. Now – far more than ever

25 before – Comcast and other cable operators are equipped to rapidly collect and indefinitely retain

26 large volumes of this valuable data in their electronic records.

27

28

CLASS ACTION COMPLAINT

-4-

1    14.    There are numerous serious and troubling privacy issues implicated by Comcast's
2  practice of retaining and misusing their former customers' personal information, including the
3  risk of identity theft and conversion of personal financial accounts.

4    15.    Accordingly, CCPA affords consumers significant protection with respect to the
5  collection, maintenance, and disclosure of personally identifiable information ("PII") provided
6  by the subscriber to the cable operator.

7    16.    Specifically, CCPA requires cable operators to provide annual notice setting forth
8  the "nature of personally identifiable information collected;" "the nature, purpose, and frequency
9  of any disclosure" of that information; the "period during which such information will be
10  maintained;" "the times and place at which the subscriber may have access to such information;"
11  and the limitations imposed on the cable operator by this provision of CCPA.  47 U.S.C. §
12  551(a)(1).

13    17.    In addition, CCPA governs the way that cable operators are to destroy the PII of
14  former subscribers.    CCPA requires that cable operators must destroy the PII of former
15  subscribers "if the information is no longer necessary for the purpose for which it was collected"
16  and there are no outstanding requests or orders for such information.  47 U.S.C. § 551(e).

17    18.    Under CCPA, "personally identifiable information" is not specifically defined.
18  However, the courts have concluded that it broadly encompasses "specific information about the
19  subscriber, or a list of names and addresses on which the subscriber is included."[1]

20  ***Comcast's Collection of Consumers' PII***

21    19.    Founded in Mississippi in 1963, Comcast has rapidly grown to become the largest
22  cable television operator and provider of home Internet service in the United States, as well as
23  the nation's third-largest provider of home telephone service.  In 40 states as well as the District
24  of Columbia, Comcast offers a wide range of services that includes cable television, broadband
25  Internet, telephone service, and home security for residential customers as well as commercial

26

27    [1] *See, e.g., Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874, 876 fn. 2 (10th Cir. 1992).

28

CLASS ACTION COMPLAINT

-5-

1    facilities.[2]   Comcast serves 23 million cable television customers, approximately 17 million

2    high-speed Internet customers, and nearly 9 million voice customers.[3]   In 2011, the company

3    earned nearly $56 billion in gross revenues and had a net income of approximately $4.2 billion.[4]

4      20.     Comcast requests that subscribers provide PII to Comcast in order to receive cable

5    service, including social security number, address, phone number, and credit and debit card

6    information.

7      21.     Once Comcast obtains that information, it maintains a digital record system with

8    every subscriber's personal information, adding to each consumer's file as they acquire more

9    information.

10      22.     Comcast's online Customer Privacy Policy provides as follows:

11
12
13
14
15
16

> Comcast maintains personally identifiable information about you in our regular business records while you are a subscriber to our cable service or other services. We also maintain this information for a period of time after you are no longer a subscriber if the information is necessary for the purposes for which it was collected or to satisfy legal requirements. These purposes typically include business, legal, or tax purposes. If these purposes no longer apply, we will destroy the information according to our internal policies and procedures.[5]

17    *Comcast's Unlawful Retention of Consumers' PII*

18      23.     While Comcast's Privacy Policy claims that consumer information is destroyed

19    "according to our internal policies and procedures," in practice, Comcast simply retains

20    consumers' PII indefinitely.

21

22      [2] http://en.wikipedia.org/wiki/Comcast#cite_note-annual_report-2 (last visited May 1, 2012).

23
24      [3] *Comcast Reports First Quarter 2011 Results*, www.cmcsk.com/releasedetail.cfm?ReleaseID=574179 (March 31, 2011).

25      [4] *2010 Form 10-K, Comcast Corporation*, United States Securities and Exchange Commission (March 14, 2011).

26
27      [5] http://www.comcast.com/Corporate/Customers/Policies/CustomerPrivacy.html (last visited April 30, 2012).

28

1    24.    This indefinite retention of PII is prohibited by CCPA, which requires cable

2    operators to "destroy personally identifiable information if the information is no longer necessary

3    for the purpose for which it was collected." 47 U.S.C. § 551(e).

4    25.    Comcast also fails to provide CCPA-mandated privacy notices to customers

5    whose accounts have been closed, but whose information is still retained by Comcast. Those

6    consumers are thus unaware that their information is retained indefinitely by Comcast.

7    26.    CCPA requires that cable operators provide written notice at least once a year

8    regarding the retention and disclosure of PII, "clearly and conspicuously" informing the

9    consumer of "the nature of personally identifiable information collected ... and the nature of the

10   use of such information; [ ] the nature, frequency, and purpose of any disclosure which may be

11   made of such information, including an identification of the types of persons to whom the

12   disclosure may be made; [ ] the period during which such information will be maintained by the

13   cable operator; [and] the times and places at which the subscriber may have access to such

14   information." 47 U.S.C. § 551(a).

15   27.    After the termination of services, Comcast fails to provide notice to consumers

16   regarding the type of PII collected and retained, and any disclosure of that information that may

17   have occurred.

18   ***Consumers Place a High Value on Their PII***

19   28.    At a Federal Trade Commission ("FTC") public workshop in 2001, then-

20   Commissioner Orson Swindle described the value of a consumer's personal information as

21   follows:

22                   The use of third party information from public records, information
23                   aggregators and even competitors for marketing has become a
                     major facilitator of our retail economy.  Even [Federal Reserve]
24                   Chairman [Alan] Greenspan suggested here some time ago that it's
                     something on the order of the life blood, the free flow of
25                   information.[6]

26   ───────────────────────────
        [6] *The Information Marketplace: Merging and Exchanging Consumer Data*,
27   http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

28
     CLASS ACTION COMPLAINT
                                                  -7-

1    29.    Though Commissioner's Swindle's remarks are more than a decade old, they are

2  even more relevant today, as consumers' personal data functions as a "new form of currency"

3  that supports a \$26 billion per year online advertising industry in the United States.[7]

4    30.    The FTC has also recognized that consumer data is a new – and valuable – form

5  of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela

6  Jones Harbour, underscored this point by observing:

7
8
9

> Most consumers cannot begin to comprehend the types and amount
> of information collected by businesses, or why their information
> may be commercially valuable. Data is currency. The larger the
> data set, the greater potential for analysis – and profit.[8]

10
11
12
13
14
15
16

31.    Recognizing the high value that consumers place on their PII, many companies

now offer consumers an opportunity to sell this information to advertisers and other third parties.

The idea is to give consumers more power and control over the type of information that they share

– and who ultimately receives that information. And by making the transaction transparent,

consumers will make a profit from the surrender of their PII.[9]    This business has created a new

market for the sale and purchase of this valuable data.[10]

17
18
19

20
21

[7] *See Web's Hot New Commodity: Privacy,*
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

22
23

[8] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).

24
25

[9] *You Want My Personal Data? Reward Me for It,*
http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

26
27

[10] *See Web's Hot New Commodity: Privacy,*
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

28

CLASS ACTION COMPLAINT

-8-

1    32.    In fact, consumers not only place a high value on their PII, but also place a high
2    value on the *privacy* of this data. Thus, the question is not *whether* consumers value such
3    privacy; the question is "*how much* [consumers] value" that privacy.[11]

4    33.    Researchers have already begun to shed light on how much consumers value their
5    data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers']
6    privacy information is made more salient and accessible, some consumers are willing to pay a
7    premium to purchase from privacy protective websites."[12]

8    34.    When consumers were surveyed as to how much they valued their personal data in
9    terms of its protection against improper access and unauthorized secondary use – two concerns at
10   issue here – they valued the restriction of improper access to their data at between $11.33 and
11   $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[13]

12   35.    Given these facts, any company that transacts business with a consumer and then
13   retains that consumer's PII in contravention of statutorily guaranteed privacy protections has thus
14   deprived that consumer of the full monetary value of the consumer's transaction with the
15   company.

16   ### Facts Pertaining to Plaintiff Bayer

17   36.    In or about July 2006, Bayer signed up for Comcast cable services. Bayer
18   provided Comcast with PII including his address, telephone number, and social security number,
19   in order to receive the service.

20   37.    In or about July 2007, Bayer canceled his service with Comcast.

21   38.    On information and belief, as of the date of this filing, Comcast still retains
22   Bayer's PII.

23   ---

[11] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003)
24   at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited
April 25, 2012).

25   [12] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing
26   Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

27   [13] *Id.*

28   ────────────────────────────────

39. Since canceling his service, Bayer has never received notice from Comcast informing him that Comcast still retains his PII. Specifically, Bayer has not received any notices from Comcast informing him of the nature of the information collected; the nature, purpose and frequency of any disclosure which was made of this information; the period of time during which Comcast will maintain this information; and the time and place that Bayer may gain access to this information.

## Facts Pertaining to Plaintiff Cook

40. In or about December 2000, Cook signed up for Comcast cable services. Cook provided Comcast with PII including her address, telephone number, and social security number, in order to receive cable services.

41. In or about February 2004, Cook canceled her service with Comcast.

42. On information and belief, as of the date of this filing, Comcast still retains Cook's PII.

43. Since canceling her service, Cook has never received notice from Comcast informing her that Comcast still retains her PII. Specifically, Cook has not received any notices from Comcast informing her of the nature of the information collected; the nature, purpose and frequency of any disclosure which was made of this information; the period of time during which Comcast will maintain this information; and the time and place that Cook may gain access to this information.

## V. CLASS ACTION ALLEGATIONS

44. Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who signed up for cable service with Comcast, and whose personally identifiable information was retained by Comcast after the termination of services (the "Retention Class").

CLASS ACTION COMPLAINT

-10-

1  Excluded from the Retention Class are Comcast and its subsidiaries and affiliates; all persons

2  who make a timely election to be excluded from the Class; governmental entities; and the judge

3  to whom this case is assigned and any immediate family members thereof.

4      45.    Plaintiff brings Count II, as set forth below, on behalf of themselves and as a class

5  action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

6  Procedure on behalf of a class defined as:

7          All persons in the United States who signed up for cable service
8          with Comcast, and who were never issued annual written notices
           from Comcast regarding Comcast's retention or disclosure of their
9          personally identifiable information (the "Notice Class").

10  Excluded from the Notice Class are Comcast and its subsidiaries and affiliates; all persons who

11  make a timely election to be excluded from the Class; governmental entities; and the judge to

12  whom this case is assigned and any immediate family members thereof.

13     46.    Plaintiff Cook brings Counts III-V, as set forth below, on behalf of herself and as

14  a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

15  Civil Procedure on behalf of a class defined as:

16         All persons residing in the State of California who signed up for
17         cable service with Comcast, and whose personally identifiable
           information was retained by Comcast after the termination of
18         services (the "California State Class").

19  Excluded from the California State Class are Comcast and its subsidiaries and affiliates; all

20  persons who make a timely election to be excluded from the Class; governmental entities; and

21  the judge to whom this case is assigned and any immediate family members thereof.

22     47.    The Retention Class, Notice Class, and California State Class shall be referred to

23  collectively as "the Class" below unless otherwise specified.

24     48.    Certification of Plaintiffs' claims for classwide treatment is appropriate because

25  Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as

26  would be used to prove those elements in individual actions alleging the same claims.

27

28

CLASS ACTION COMPLAINT

-11-

1    49.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the
2   class are so numerous that individual joinder of all Class members in impracticable.  On
3   information and belief, there are thousands of consumers who have been affected by Comcast's
4   wrongful conduct.  The precise number of the Class members and their addresses is presenty
5   unknown to Plaintiffs, but may be ascertained from Comcast's books and records.  Class
6   members may be notified of the pendency of this action by recognized, Court-approved notice
7   dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or
8   published notice.

9    50.    **Commonality and Predominance – Federal  Rule of Civil Procedure 23(a)(2)
10  and 23(b)(3).**  This action involves common questions of law and fact, which predominate over
11  any questions affecting individual Class members, including, without limitation:

12          a. whether Comcast engaged in the conduct as alleged herein;

13          b. whether Plaintiffs and the other Class members are entitled to actual, statutory, or
14              other forms of damages, and other monetary relief and, if so, in what amount(s);
15              and

16          c. whether Plaintiffs and other Class members are entitled to equitable relief, including
17              but not limited to injunctive relief and restitution.

18   51.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are
19  typical of the other Class members' claims because, among other things, all Class members were
20  comparably injured through the uniform misconduct described above.

21   52.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**
22  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the
23  interests of the other Class members they seek to represent; they have retained counsel
24  competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute
25  this action vigorously.  The Class members' interests will be fairly and adequately protected by
26  Plaintiffs and their counsel.

27

28

1    53.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
2    Comcast has acted or refused to act on grounds generally applicable to Plaintiffs and the other
3    Class members, thereby making appropriate final injunctive relief and declaratory relief, as
4    described below, with respect to Class members as a whole.

5    54.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).**    A class action is
6    superior to any other available means for the fair and efficient adjudication of this controversy,
7    and no unusual difficulties are likely to be encountered in the management of this class action.
8    The damages or other financial detriment suffered by Plaintiffs and the other Class members are
9    relatively small compared to the burden and expense that would be required to individually
10   litigate their claims against Comcast, so it would be impracticable for Class members to
11   individually seek redress from Comcast's wrongful conduct.  Even if Class members could
12   afford individual litigation, the court system could not.  Individualized litigation creates a
13   potentional for inconsistent or contradictory judgments, and increases the delay and expense to
14   all parties and the court system.  By contrast, the class action device presents far fewer
15   management difficulties, and provides the benefits of single adjudication, economy of scale, and
16   comprehensive supervision by a single court.

17   ## VI. CLAIMS ALLEGED

18   ## COUNT I
     ### Failure to Destroy Personally Identifiable Information
19   ### Violation of § 551(e) of the Cable Communications Policy Act
     ### (On Behalf of the Retention Class)
20

21   55.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-54 as
22   though fully set forth herein.

23   56.    Comcast is a "cable operator" as defined by CCPA because Comcast provides
24   "cable services," which is "the one-way transmission to subscribers of [ ] video programming, or
25   [ ] other programming service; [and] subscriber interaction, if any, which is required for the
26   selection or use of such video programming or other programming service." 47 U.S.C. § 522(5)
27   & (6).

28

1    57.    CCPA mandates, among other things, that a cable operator "destroy personally
2  identifiable information if the information is no longer necessary for the purpose for which is
3  was collected." 47 U.S.C. § 551(e).

4    58.    After Plaintiffs' accounts and the accounts of each of the members of the
5  Retention class were terminated, Comcast continued to maintain Plaintiffs' PII even though such
6  information was no longer necessary to maintain for the purpose for which it was collected.

7    59.    The foregoing conduct violates 47 U.S.C. § 551(e).

8    60.    Plaintiffs and the Retention Class have suffered injuries as a result of Comcast's
9  violation of 47 U.S.C. § 551. Comcast's failure to destroy the PII of Plaintiffs and the Retention
10  Class, as required 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of their
11  federally protected privacy rights. In addition, Comcast's failure to comply with CCPA has
12  deprived Plaintiffs and the Retention Class of their ability to make informed decisions with
13  respect to their privacy.

14    61.    Moreover, since Plaintiffs and the Retention Class purchased cable services from
15  Comcast, and Comcast was obligated to comply with CCPA, Comcast's failure to destroy their
16  PII deprived them of the full value of the services that they bargained and paid for. Because
17  Plaintiffs and the Retention Class ascribe monetary value to their ability to control their PII,
18  Plaintiffs and the Retention Class have sustained, and continue to sustain, monetary and
19  economic injuries as a direct and proximate result of Comcast's violation of 47 U.S.C. § 551.

20    62.    Plaintiffs' and the Retention Class' PII constitutes personal property. Comcast's
21  failure to comply with 47 U.S.C. § 551 has also deprived Plaintiffs and the Retention Class of the
22  opportunity to control that personal property for its own financial gain. Accordingly, Plaintiffs
23  and the Retention Class have sustained, and continue to sustain, monetary and economic injuries
24  as a direct and proximate result of Comcast's violation of 47 U.S.C. § 551.

25    63.    CCPA provides a private right of action to consumers who have been aggrieved
26  by a violation of 47 U.S.C. § 551. Specifically, any person aggrieved by any act of a cable

27

28

CLASS ACTION COMPLAINT

-14-

1  operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated

2  damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is

3  higher." 47 U.S.C. § 551(f)(2)(A).

4      64.     In addition, any person aggrieved by any act of a cable operator violating 47

5  U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation

6  costs reasonably incurred." 47 U.S.C. § 551(f)(2)(B)&(C).

7      65.     Plaintiffs, on behalf of themselves and the Retention Class, therefore seek redress

8  as provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by

9  CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

10                                            **COUNT II**

11                              **Failure to Provide Adequate Notice**
                   **Violation of § 551(a) of the Cable Communications Policy Act**
12                                  **(On Behalf of the Notice Class)**

13      66.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-54 as

14  though fully set forth herein.

15      67.     After the termination of services, Comcast continued to maintain Plaintiffs' PII

16  and the PII of each of the members of the Notice Class.

17      68.     Plaintiffs and each of the members of the Notice Class did not receive a yearly

18  privacy notice from Comcast as required under CCPA.

19      69.     The foregoing conduct violates 47 U.S.C. § 551(a).

20      70.     Plaintiffs and the Notice Class have suffered injuries as a result of Comcast's

21  violation of 47 U.S.C. § 551. Comcast's failure to issue annual notices under CCPA, as required

22  47 U.S.C. § 551, constitutes injury in the form of a direct invasion of the federally protected

23  privacy rights of Plaintiffs and the Notice Class. In addition, Comcast's failure to comply with

24  CCPA has deprived Plaintiffs and the Notice Class of their ability to make informed decisions

25  with respect to their privacy.

26      71.     Moreover, since Plaintiffs and the Notice Class purchased cable services from

27  Comcast, and Comcast was obligated to comply with CCPA, Comcast's failure to issue the

28

1    requisite annual notices deprived them of the full value of the services that they bargained and
2    paid for. Because Plaintiffs and the Notice Class ascribe monetary value to their ability to
3    control their PII, Plaintiffs and the Notice Class have sustained, and continue to sustain,
4    monetary and economic injuries as a direct and proximate result of Comcast's violation of 47
5    U.S.C. § 551.

6        72.    Plaintiffs' and the Notice Class' PII constitutes personal property. Comcast's
7    failure to comply with 47 U.S.C. § 551 has also deprived Plaintiffs and the Notice Class of the
8    opportunity to control that personal property for their own financial gain. Accordingly, Plaintiffs
9    and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as
10   a direct and proximate result of Comcast's violation of 47 U.S.C. § 551.

11       73.    CCPA provides a private right of action to consumers who have been aggrieved
12   by a violation of 47 U.S.C. § 551. Specifically, any person aggrieved by any act of a cable
13   operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated
14   damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is
15   higher." 47 U.S.C. § 551(f)(2)(A).

16       74.    In addition, any person aggrieved by any act of a cable operator violating 47
17   U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation
18   costs reasonably incurred." 47 U.S.C. § 551(f)(2)(B)&(C).

19       75.    Plaintiffs, on behalf of themselves and the Notice Class, therefore seeks redress as
20   provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by
21   CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

22                                    **COUNT III**
23               **Violation of the California Customer Records Act,**
                         **Cal.Civ.Code § 1798.80, *et seq.***
24                  **(On Behalf of the California State Class)**

25       76.    Plaintiff Cook ("Plaintiff" for purposes of this Count III) adopts and incorporates
26   by reference paragraphs 1-54 of this Complaint as if fully set forth herein.

27       77.    The California Customer Records Act ("CCRA") provides, in pertinent part, that

28
CLASS ACTION COMPLAINT

-16-

> A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or indecipherable through any means.

Cal.Civ.Code § 1798.81.

78.     Under the CCRA, "personal information" is defined as

> any information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information[.]

Cal.Civ.Code § 1798.80 (emphasis added).

79.     Plaintiff and the other members of the California State Class cancelled their subscription to and no longer use Comcast's services. Therefore, Comcast no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class. Nonetheless, Comcast has continued to retain this personal information in its records.

80.     In addition, on information and belief, Comcast has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

81.     Plaintiff and the California State Class have suffered injuries as a result of Comcast's violation of the CCRA. Comcast's failure to destroy their PII as required by the CCRA constitutes injury in the form of a direct invasion of their statutory rights. In addition, Comcast's failure to comply with the CCRA has deprived Plaintiff and the California State Class of their ability to make informed decisions with respect to their privacy.

82.     Moreover, since Plaintiff and the California State Class purchased cable services from Comcast, and Comcast was obligated to comply with the CCRA, Comcast's failure to

1  destroy their PII deprived them of the full value of the services that they bargained and paid for.
2  Because Plaintiff and the California State Class ascribe monetary value to their ability to control
3  their PII, Plaintiff and the California State Class have sustained, and continue to sustain,
4  monetary and economic injuries as a direct and proximate result of Comcast's violation of the
5  CCRA.

6      83.    Plaintiff's and the California State Class' PII constitutes personal property.
7  Comcast's failure to comply with the CCRA has also deprived Plaintiff and the California State
8  Class of the opportunity to control that personal property for its own financial gain.
9  Accordingly, Plaintiff and the California State Class have sustained, and continue to sustain,
10  monetary and economic injuries as a direct and proximate result of Comcast's violation of the
11  CCRA.

12      84.    The CCRA provides a private right of action to consumers. Specifically, it states
13  that "[a]ny customer injured by a violation of this title may institute a civil action to recover
14  damages." Cal.Civ.Code § 1798.84(b). In addition, the CCRA provides that "any business that
15  violates, proposes to violate, or has violated this title may be enjoined." Cal.Civ.Code §
16  1798.84(e).

17      85.    Plaintiff, on her own behalf and on behalf of the other members of the California
18  State Class, seeks judgment in her favor and against Comcast, and awarding her and the other
19  members of the California State Class injunctive relief and the maximum damages available
20  under Cal.Civ.Code § 1798.84.

21
22

**COUNT IV**
**Breach of Implied Contract**
**(On Behalf of the California State Class)**

23      86.    Plaintiff Cook ("Plaintiff" for purposes of this Count IV) adopts and incorporates
24  by reference paragraphs 1-65 and 76-85 of this Complaint as if fully set forth herein.

25
26
27
28

CLASS ACTION COMPLAINT

-18-

1      87.    Those who subscribed to Comcast's cable service, including Plaintiff, were

2 required by Comcast to provide their social security number, address, phone number, and credit

3 card and debit card information.

4      88.    In providing this personal data to Comcast, Plaintiff and other members of the

5 California State Class entered into an implied contract with Comcast (the "Contract"). Pursuant

6 to the Contract, Comcast became obligated to safeguard this data through all reasonable

7 measures. This obligation includes complying with industry standards.

8      89.    The industry standard applicable to the credit-card transaction described above is

9 set forth in Requirement 3.1 of the Data Security Standard (DSS) promulgated by the Payment

10 Card Industry Security Standards Council. Specifically, that standard requires the merchants to

11 implement the following security measures:

12            Keep cardholder data storage to a minimum by implementing data retention and

13            disposal policies, procedures and processes, as follows.

14            Implement a data retention and disposal policy that includes:
                • Limiting data storage amount and retention time to that which is required

15                  for legal, regulatory, and business requirements
                • Processes for secure deletion of data when no longer needed

16                • Specific retention requirements for cardholder data

17                • A quarterly automatic or manual process for identifying and securely
                  deleting stored cardholder data that exceeds defined retention

18                  requirements[.][14]

19      90.    Comcast breached its Contract with consumers by failing to adopt and comply

20 with the foregoing industry-standard practices, and by failing to destroy PII after the information

21 is no longer necessary for the purpose for which it was collected.

22      91.    In addition, because the laws existing at the time and place of the making of the

23 Contract are and were incorporated into the Contract, the Contract included obligations for the

24 parties to abide by all applicable laws, including CCPA and the CCRA.

25

26
      ―――――――――

27      [14] PCI Security Standards Council LLC, Navigating PCI DDS: Understanding the Intent of the
Requirements, v2.0 (October 2010), p. 20.

28

1      92.     Plaintiff and the California State Class performed their obligations under the
2 Contract by paying the consideration owed to Defendant for the provision of cable service, and
3 by complying with all applicable laws then in force.

4      93.     Comcast's failure to perform its contractual obligations imposed by CCPA and
5 the CCRA – i.e., the timely destruction of consumers' PII – constitutes a material breach of the
6 Contract.

7      94.     Plaintiff and the California State Class have suffered actual damages as a result of
8 Comcast's breach in the form of the value Plaintiff and the California State Class ascribe to the
9 confidentiality and timely destruction of their PII. This amount is tangible and can be calculated
10 at trial.

11      95.     Further, a portion of the services purchased by Plaintiff and the California State
12 Class were intended to pay for Comcast's costs in timely destroying its customers' PII, as
13 required by CCPA and the CCRA.

14      96.     Because Plaintiff and the California State Class were denied of services that they
15 bargained and paid for and were entitled to receive—i.e., confidentiality of their PII and timely
16 destruction of same—Plaintiff and the California State Class incurred actual monetary damages
17 in that they overpaid for the services they bargained for.

18      97.     Accordingly, Plaintiff and the California State Class seek an order declaring that
19 Comcast's conduct constitutes a breach of contract, and awarding Plaintiff and the California
20 State Class damages in an amount to be calculated at trial.

21 

**COUNT V**
**Violation of Cal. Penal Code § 637.5**
**(On Behalf of the California State Class)**

22

23      98.     Plaintiff Cook ("Plaintiff" for purposes of this Count V) adopts and incorporates
24 by reference paragraphs 1-54 of this Complaint as if fully set forth herein.

25      99. Section 637.5 of the California Penal Code provides in pertinent part:

26

27

28

Individual subscriber viewing responses or other individually identifiable information derived from subscribers *may be retained and used by a satellite or cable television corporation only to the extent reasonably necessary for billing purposes and internal business practices, and to monitor for unauthorized reception of services.* A satellite or cable television corporation may compile, maintain, and distribute a list containing the names and addresses of its subscribers if the list contains no other individually identifiable information and if subscribers are afforded the right to elect not to be included on the list. However, a satellite or cable television corporation shall maintain adequate safeguards to ensure the physical security and confidentiality of the subscriber information.

Cal. Penal Code § 637.5(b) (emphasis added).

100. If a cable operator violates the above section of the California Penal Code, the subscriber may assert a private right of action for invasion of privacy. Section 637.5 provides in pertinent part:

Any aggrieved person may commence a civil action for damages for invasion of privacy against any satellite or cable television corporation, service provider, or person that leases a channel or channels on a satellite or cable television system that violates the provisions of this section.

Cal. Penal Code § 637.5(i) (the "California Penal Code").

101. Plaintiff and the other members of the California State Class cancelled their subscription to and no longer use Comcast's services. Therefore, Comcast no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class. Nonetheless, Comcast has continued to retain this personal information in its records.

102. In addition, on information and belief, Comcast has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

103. Plaintiff and the California State Class have suffered injuries as a result of Comcast's violation of the California Penal Code. Comcast's failure to destroy their PII as required by the California Penal Code constitutes injury in the form of a direct invasion of their statutory rights. In addition, Comcast's failure to comply with the California Penal Code has

CLASS ACTION COMPLAINT

-21-

1 | deprived Plaintiff and the California State Class of their ability to make informed decisions with
2 | respect to their privacy.

3 |     104.   Moreover, since Plaintiff and the California State Class purchased cable services
4 | from Comcast, and Comcast was obligated to comply with the California Penal Code, Comcast's
5 | failure to destroy their PII deprived them of the full value of the services that they bargained and
6 | paid for. Because Plaintiff and the California State Class ascribe monetary value to their ability
7 | to control their PII, Plaintiff and the California State Class have sustained, and continue to
8 | sustain, monetary and economic injuries as a direct and proximate result of Comcast's violation
9 | of the California Penal Code.

10 |     105.   Plaintiff's and the California State Class' PII constitutes personal property.
11 | Comcast's failure to comply with the CCRA has also deprived Plaintiff and the California State
12 | Class of the opportunity to control that personal property for its own financial gain.
13 | Accordingly, Plaintiff and the California State Class have sustained, and continue to sustain,
14 | monetary and economic injuries as a direct and proximate result of Comcast's violation of the
15 | California Penal Code.

16 |     106.   Plaintiff, on her own behalf and on behalf of the other members of the California
17 | State Class, seeks judgment in her favor and against Comcast, and awarding her and the other
18 | members of the California State Class injunctive relief and the maximum statutory damages
19 | available under California Penal Code.

20 | **VII.**   **JURY DEMAND**

21 |     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by
22 | jury of all claims in this Complaint so triable.

23
24
25
26
27
28

1

## VIII. REQUEST FOR RELIEF

2     WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes

3 proposed in this Complaint, respectfully request that the Court enter an Order awarding the

4 following relief:

5     A. Declaring that this action may be maintained as a class action, and certifying the

6        Classes as requested herein;

7     B. Enjoining Comcast from the unlawful practices and statutory violations asserted

8        herein;

9     C. An Order awarding liquidated damages pursuant to CCPA;

10     D. An Order awarding punitive damages pursuant to CCPA;

11     E. An Order awarding compensatory damages pursuant to the California statutes and

12        common-law causes of action asserted herein;

13     F. An Order awarding attorneys' fees and costs pursuant to CCPA; and

14     G. Such other and further relief as may be just and proper.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1    Dated: May 31, 2012

Respectfully submitted,

STEVE BAYER and KANDI COOK, on
behalf of themselves and all others similarly
situated,

By: _____

One of the Attorneys for Plaintiffs
and the Proposed Putative Classes

Joseph J. Siprut*
*jsiprut@siprut.com*
James M. McClintick
*jmcclintick@siprut.com*
SIPRUT PC
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
312.588.1440
Fax: 312.427.1850

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA 92101
619. 255.2380
Fax: 619.231.4984

*Pro hac vice* admittance to be sought

4814-3680-3087, v. 1

CLASS ACTION COMPLAINT

-24-